In re RECUSAL MOTION, or Application for Change or Reassignment of Judge Pursuant to 28 U.S.C. §§ 144 and 455 of All Matters Currently Pending Before the Honorable Thomas K. Moore in which the Law Offices of Lee J. Rohn is Attorney of Record.

MISC. NO. 2000–001.

District Court, Virgin Islands, D. St. Croix.

July 24, 2000.

K. Glenda Cameron, St. Croix, U.S.V.I., for the Law Offices of Lee J. Rohn and its clients, including plaintiff-petitioners Peter Anderson, Catherine Figueroa, Caledonia Springs, Inc., Domino Oil, Inc., Marie Saldana, Islands Management Group, Inc., and Will Jones.

Andrew C. Simpson, St. Croix, U.S.V.I., for Bryant, Barnes & Simpson, P.C., and its clients, including defendant-respondent Kmart Corp.

George H. Logan, St. Croix, U.S.V.I., for defendant-respondents Buccaneer Hotel, Inc., Companion Assurance Co., and Meridian Eng'g, Inc.

Gary M. Alizzeo, St. Thomas, U.S.V.I., for defendant-respondent Phoenix Assurance Co.

Richard H. Dollison, St. Thomas, U.S.V.I., for defendant-respondents Bank of Nova Scotia and Yacht Haven Holdings, Inc.[1]

## MEMORANDUM

MOORE, District Judge.

### Introduction

Attorney Lee J. Rohn is a competent, successful trial lawyer who has occasional-

---

1. Several defendant-respondents did not respond to the petitioners' motion. Attorney Kevin A. Rames, who represents the Daily News Publishing Co. in *Jones v. Daily News Publishing Co.*, Civ. No.1999–138, responded by letter, noting that his client had not instructed him to take a position on the petitioners' motion. On the other hand, the St. Croix law firm of Hunter Colianni Cole & Bennett moved to intervene and file a brief in opposition. The magistrate judge denied this motion because, among other reasons, "the *contra* view to the [p]etition is adequately represented by existing counsel." (*See* Order, Mar. 22, 2000.)

ly refused to follow the rules of civil procedure, decorum, and professional ethics applicable to all counsel who practice in the District Court of the Virgin Islands. Last winter, for example, I imposed sanctions upon Attorney Rohn for repeatedly using the word "fuck" ["f**k"] during judicial proceedings. *See Saldana v. Kmart Corp.*, 84 F.Supp.2d 629, 637, 640 (D.Vi. 1999); *see also infra* Section II.10 (discussing case in detail). This decision apparently led the Law Offices of Lee J. Rohn and District Court plaintiffs Peter Anderson, Catherine Figueroa, Caledonia Springs, Inc., Domino Oil, Inc., Marie Saldana, Islands Management Group, Inc., and Will Jones [collectively, "petitioners"], to ask that I disqualify myself in perpetuity from all cases handled by Attorney Rohn and her law firm for personal bias or prejudice. The petitioners have not requested a hearing, nor is one necessary for me to dispose of their unfounded, broadly-worded, and overwrought accusations.

The petitioners' premise—that I harbor or appear to possess some personal antagonism toward Attorney Rohn—has absolutely no basis in fact. None of my actions or decisions, including those which sanctioned or disciplined Attorney Rohn, approach the sort of conduct required for recusal. As the Supreme Court has declared:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The reasonable and objective observer who takes the time to become fully informed by going through the petitioners' accusations and the recorded facts in Attorney Rohn's cases would conclude that the petitioners' motion is baseless, and that I have no grounds to reassign all of Attorney Rohn's cases to another judge.

This Memorandum Opinion will demonstrate at some length, through constant reference to the public record, that my decisions evince no bias or prejudice toward Attorney Rohn, her firm, or her clients. The petitioners' desperate, overreaching accusations are unworthy of belief, and merely illustrate my previous comments regarding the litigation tactics employed by the petitioners' counsel. *See Saldana,* 84 F.Supp.2d at 639 (observing that, "[t]o Attorney Rohn, litigation is a form of mortal combat which she must win at any and all costs"). I will deny the petitioners' attempt to convert their attorney's misconduct into grounds for judicial disqualification.

## DISCUSSION

### I. Underlying Law

■ The petitioners move for disqualification under title 28, sections 144 and 455 of the *United States Code.* (*See* Pet., Jan. 21, 2000, at 2, 30.) Their request reveals some confusion over which federal disqualification statute applies to proceedings in the District Court of the Virgin Islands. Section 144 does not apply because this tribunal is not a "District Court of the United States" established under Article III of the United States Constitution. *See* 28 U.S.C. § 451; *Callwood v. Callwood,* 3

V.I. 61, 64, 127 F.Supp. 179, 180 (D.Vi. 1954); *see also Government of Virgin Islands v. Gereau,* 11 V.I. 265, 295, 502 F.2d 914, 931 (3d Cir.1974) (adopting conclusion drawn in *Callwood* ); (Pl.'s Mot. to Recuse, Civ. No.1996–015, at 2 n. 2 (St. Croix Div. Nov. 12, 1998)).[2]

Section 455 governs the claims raised in the petition. It applies "to each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States." *See* 28 U.S.C. § 460. This statute mandates that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or "where he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a–b).

I harbor no personal bias or prejudice whatsoever against Attorney Rohn, or any of the petitioners. Therefore, it remains for me to determine whether a rational, objective member of the public who knows all of the relevant facts might fairly question my impartiality. *See, e.g., Edelstein*

*v. Wilentz,* 812 F.2d 128, 131 (3d Cir.1987); (Pet'rs' Mem., Jan. 21, 2000, at 3).[3]

## II. Judicial Grounds Advanced for Disqualification

I categorically reject the petitioners' allegations that I am "blinded by personal bias" "so total, reckless and malicious" that I "appear bent on punishing counsel," and refuse to fairly apply the law, "seemingly to publicly humiliate Attorney Rohn," who has "suffered … threats, derogatory remarks, antipathy and personal sanctions." (*See* Pet. at 8, 7, 5, 22, 28, 43.) Nonetheless, I must examine the petitioners' assertion that reasonable, informed persons would accept these accusations, or believe that I *appear* to possess "pervasive" bias or prejudice against Attorney Rohn or her clients.

■  The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *See Liteky,* 510 U.S. at 555, 114 S.Ct. 1147 (citation omitted). Opinions de-

---

**2.** Even if section 144 applied to this case, the petitioners' statements would be legally insufficient for disqualification. "Recusal motions pursuant to [28 U.S.C. § 144] must be timely filed, … and include an affidavit stating material facts with particularity which, if true, would lead a reasonable person to the conclusion that the district judge harbored a special bias or prejudice…." *United States v. Rosenberg,* 806 F.2d 1169, 1173 (3d Cir.1986) (citation omitted). All but one of the petitioners' affidavits consist of the same basic five-sentence mantra:

> I have read the article which appeared in the January 6, 2000[,] edition of *The Virgin Islands Daily News.* My case is pending before Judge Moore and he imposed sanctions in my case without notice and a hearing or otherwise complying with the requirements of procedural due process. I believe that Judge Moore is biased against Attorney Rohn. Because of Judge Moore's obvious prejudice against [her], I am fearful he will take it out on my case and me. He has already made rulings in my case which I do not believe are supported by the law and I believe he made those rulings due to his prejudice against my attorney.

(*See, e.g.,* Pet., Ex. 2 (affidavit of Catherine Figueroa); *see also id.* Ex. 1 (affidavit of

Attorney Rohn).)  I review these allegations under section 455 later in this Memorandum Opinion. *See infra* Sections II.9 & II.12. Under section 144, however, I would assume the truth of these statements and consider whether they would convince a reasonable person that I possess "a special bias or prejudice." *See Rosenberg,* 806 F.2d at 1173. I would find that reasonable persons would not accept such bald, unsupported conclusions as evidence of judicial bias or prejudice.

**3.** In making this determination, I need not accept all of the petitioners' allegations as true. *See United States v. Sciarra,* 851 F.2d 621, 625 n. 12 (3d Cir.1988) ("There is considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455 may be scrutinized by the court deciding the motion for recusal.") (citations omitted); *see also Weatherhead v. Globe Int'l, Inc.,* 832 F.2d 1226, 1227 (10th Cir.1987); *In re Beard,* 811 F.2d 818, 826–27 (4th Cir.1987); *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir. 1985); *Phillips v. Joint Legislative Comm. on Perf. & Expend. Review,* 637 F.2d 1014, 1019 n. 6 (5th Cir. Unit A 1981).

rived from judicial proceedings are not grounds for disqualification unless they evince "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Reasonable, objective persons armed with the facts would perceive no such favoritism or antagonism in my decisions.

As support for their accusations, the petitioners advance arguments and affidavits relating to seven District Court cases handled by Attorney Rohn: *Anderson v. Government of the Virgin Islands, Figueroa v. Buccaneer Hotel, Inc., Caledonia Springs, Inc. v. Royal Insurance of Puerto Rico, Inc., Domino Oil, Inc. v. Phoenix Assurance Co., Saldana v. Kmart Corporation, Islands Management Group, Inc. v. Bank of Nova Scotia,* and *Jones v. Daily News Publishing Co.* The petitioners fail to acknowledge that Attorney Rohn and her law firm have appeared before me in many other cases without questioning my impartiality or suffering sanctions or adverse rulings. They simply maintain that "there has not been a case where Judge Moore has not been negative or derogatory about Attorney Rohn personally, or her clients, or the nature of her clients['] claims, or where he has not gone out of his way to heap sanctions upon her or her clients." (Pet. at 31.) The following review of cases involving Attorney Rohn reveals that the petitioners are wrong.

### 1. *Daniel v. Government of the Virgin Islands*

Some time ago, Attorney Rohn represented Rose Daniel ["Daniel"] in an appeal before the Appellate Division of the District Court. I eventually authored the opinion of the Court, which found that the Territorial Court erred in denying Daniel's motion to file a late tort claim against the government, and concluded that the trial court abused its discretion in denying Daniel's motion to amend the complaint. *See Daniel v. Government of the Virgin Islands,* 30 V.I. 134, 139–41, 1994 WL

392236, at *3–4 (D.VI. May 26, 1994). Far from being "negative or derogatory about Attorney Rohn personally, or her clients, or the nature of her clients['] claims[,]" this opinion held in favor of Attorney Rohn's client.

### 2. *Henry v. Hess Oil Virgin Islands Corp.*

Thereafter, Attorney Rohn represented George Henry ["Henry"] in a District Court tort action against Hess Oil Virgin Islands Corp. ["HOVIC"]. In resolving HOVIC's post-trial motions for a second trial, or remittur of the jury's $1.1 million damage award, I carefully weighed the facts and the law, and decided that a second trial on HOVIC's liability was unwarranted. *See Henry v. Hess Oil V.I. Corp.,* 33 V.I. 163, 172, 163 F.R.D. 237, 244 (D.VI. 1995). Although the jury's award of damages had to be remitted or retried because it was "shockingly excessive and not rationally based on the evidence adduced at trial," I ruled that HOVIC remained liable to Attorney Rohn's client. *See* 33 V.I. at 180, 163 F.R.D. at 245. My decision upholding HOVIC's liability and requiring further proceedings on damages evinced no bias or prejudice toward Attorney Rohn or her clients.

### 3. *Hess Oil Virgin Islands Corp. v. Richardson*

The following year, Attorney Rohn defended the interests of Erica Richardson ["Richardson"] on appeal at the District Court when HOVIC challenged the trial court's denial of its motions to dismiss Richardson's complaint. I authored an opinion in which the Appellate Division overruled another Territorial Court decision in rejecting HOVIC's appeal. *See Hess Oil V.I. Corp. v. Richardson,* 32 V.I. 336, 339, 894 F.Supp. 211, 213 (D.V.I.1995) (overruling *Daniel v. St. Thomas Dairies, Inc.,* 27 V.I. 120 (Terr.Ct.1992), and affirming trial court's holding that the Virgin Islands Wrongful Discharge Act "does not require exhaustion of administrative reme-

dies or election between administrative and judicial remedies"). My opinion for the Court was not "negative or derogatory about Attorney Rohn personally, or her clients, or the nature of her clients['] claims."

### 4. *Codrington v. Virgin Islands Port Authority*

In 1995 and 1996, Attorney Rohn represented Lauretta Codrington ["Codrington"] in a District Court tort and civil rights action against the Virgin Islands Port Authority ["VIPA"]. When VIPA and its co-defendant, Wendell Hanley ["Hanley"], moved for summary judgment on Codrington's complaint, I reviewed the pertinent facts and law and rendered a decision based on both. *See Codrington v. Virgin Islands Port Auth.,* 33 V.I. 245, 911 F.Supp. 907 (D.VI.1996). I *agreed* with many of Codrington's arguments because there were "genuine issues of material fact over most of the issues raised," and her evidence, "though disputed, clearly would make out a *prima facie* case." *See* 33 V.I. at 247, 251, 911 F.Supp. at 910, 912. I dismissed several of her claims for monetary damages, however, because VIPA is not subject to punitive damages as a public corporation, and the Supreme Court has held that compensatory damages are not available by statute for certain acts that occurred before November 21, 1991. *See* 33 V.I. at 252–61, 911 F.Supp. at 913–18 (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). I reiterated that, if Codrington's statements were true, defendant Hanley's behavior was "clearly outrageous enough to support a claim." *See Codrington,* 911 F.Supp. at 918.

While I would not expect the client-petitioners to be aware of my decision in *Codrington,* or any of three cases discussed above, Attorney Rohn or her law firm obviously knew about these published opinions and yet failed to mention them in their zeal to impugn my impartiality.

### 5. *Anderson v. Government of the Virgin Islands*

In September, 1996, Peter Anderson ["Anderson"] sued the Government of the Virgin Islands, Police Commissioner Ramon Davila ["Davila"], and several other police officers for racial and national origin discrimination. (*See* Compl., Civ. No.1996–118 (St. Croix Div. Sept. 6, 1996).) Anderson and Attorney Rohn moved for a temporary restraining order ["TRO"] and preliminary injunction. (*See* Pl.'s Mot., Sept. 19, 1996.) Judge Raymond L. Finch recused himself from this case on September 24, 1996, and the case was assigned to me.

In the early evening of October 1, 1996, I conferred by telephone with counsel to schedule an emergency hearing. During this conference, I denied the defendants' motion to disqualify Attorney Rohn, accepting her representation as a member of the bar "that it was not necessary for her to be a witness in this proceeding, that whatever she was going to put on in connection with this hearing ... would be based strictly on testimony and other evidence other than what she [was] involved in." (Tr., Hr'g. for Prelim. Injunct., Oct. 2, 1996, at 6 ["Hr'g. Tr."] ); *see Anderson v. Government of the Virgin Islands,* Civ. No.1996–118, slip. op. at 3–4 (D.V.I. St. Croix Div. Oct. 16, 1996) ["*Anderson I* "].[4]

To afford Attorney Rohn and her client a speedy hearing, I heard the TRO and preliminary injunction motions together on the following day, October 2, 1996, in St. Thomas. After a two-day emergency hearing, I not only found in Anderson's favor, but also enjoined the police department from investigating or surveilling Anderson or his attorney, Lee J. Rohn.

> [T]he Court found that the defendants had engaged in surveillance of Peter Anderson and Lee Rohn as a direct

---

**4.** Previously unpublished decisions mentioned in this opinion are now available at the District Court's website, http://*www.vid.usc-ourts.gov.*

result of the lawsuit Mr. Anderson filed. The Court noted that the initial efforts to determine the ownership of [Attorney Rohn's] red Jeep and [a suspect's] connection to it were properly based upon reasonable suspicion arising from information received in an ongoing criminal investigation of drug activity. By late February 1996, however, what may have started as a proper investigation was converted and perverted into an effort to "dig up dirt" on Rohn and her client in response to [this civil] lawsuit.

See *Anderson v. Government of the Virgin Islands*, 35 V.I. 314, 318, 947 F.Supp. 894, 897 (D.VI.1996) [*"Anderson II"*]. I also denied the defendants' request to stay this injunction pending appeal. *See* 35 V.I. at 329, 947 F.Supp. at 903. Given these undisputed facts, the petitioners' effort to twist the *Anderson* record into proof of my supposed bias against Attorney Rohn and her clients is bizarre.

In November, 1997, I granted the defendants' motion to dismiss several of Anderson's claims with and without prejudice, concluding that the "murky" complaint did not distinguish between the Government of the Virgin Islands and the individual defendants on multiple counts and relied on inapplicable statutes or failed to state facts that would entitle Anderson to a legal remedy. *See Anderson v. Government of the Virgin Islands,* Civ. No.1996–118, slip. op. at 13, 14, 16, 20, 23, 24–25, 33–34, 37, 41 (D.V.I. St. Croix Div. Nov. 21, 1997) [*"Anderson III"*]. Noting that "the defendants engaged in concerted efforts to violate [the] plaintiff's constitutional rights," I denied the defendants' motions to dismiss Anderson's other claims. *See id.* at 19, 29–30, 36, 37, 40–41. I also denied Anderson's motion for partial reconsideration. *See Anderson v. Government of the Virgin Islands,* 39 V.I. 235, 240, 180 F.R.D. 284, 288 (D.VI.1998) [*"Anderson IV"*].

On January 16, 1997, Attorney Rohn caused a *subpoena duces tecum* for Davila's employment records to be issued to his former employer, the United States Customs Service ["Customs Service"]. In a January 31, 1997, letter, the Customs Service informed Attorney Rohn that she had not followed the proper procedures in submitting this request. The letter drew her attention to the precise federal regulations applicable to the discovery request, explicitly described what this first subpoena should have contained, and invited counsel to contact the Customs Service by telephone if she had further questions concerning the procedure for obtaining the desired documents. In March 1997, Attorney Rohn issued a second subpoena to the Customs Service and again failed to follow the proper procedure.

On June 11, 1998, I granted defendant Davila's motion to quash these two *subpoenae duces tecum* for his employment records.

First, plaintiff's counsel issued the ... [original] subpoena with the heading of the District Court in St. Croix and directed it to an entity located far outside the geographic reach of this Court's civil jurisdiction. The subpoena also commanded the recipient to produce documents to plaintiff's counsel's office located in St. Croix. This Court cannot order a non-party outside of its jurisdiction to produce documents to a place within this district.... The subpoena also failed to include the text of subdivisions (c) and (d) of [Federal Rule of Civil Procedure] 45 as mandated by the rule.

. . . .

Aside from the correct heading, ... the March Subpoena suffers from the same defects as found in the January Subpoena.

See 39 V.I. at 244–45, 180 F.R.D. at 290.

Davila filed several motions for sanctions against Attorney Rohn for her manifest refusal to follow the correct discovery procedures, and for abuse of the subpoena process. (*See, e.g.,* Def.'s Supp. Mem., May 15, 1997; Def.'s Second Supp. Mot.,

Apr. 24, 1997.) Attorney Rohn fully responded to these motions. (*See* Pl.'s Opp'n, May 29, 1997; Pl.'s Opp'n, Apr. 25, 1997.) After reviewing these submissions, I found that, "[e]ven after she was advised directly by the Customs Service how to go about seeking to obtain [the desired] documents ... counsel blithely issued another subpoena containing the same defects as the first and blatantly ignored the federal regulations." *See Anderson IV,* 39 V.I. at 247, 180 F.R.D. at 292. I required Attorney Rohn to reimburse Davila for the costs and attorneys fees incurred in quashing these defective subpoenas. *See id.* Attorney Rohn later asked the Court of Appeals to dismiss her interlocutory appeal of this decision. (*See* Order, No. 99–3772 (3d Cir. Dec. 23, 1999) (dismissing appeal under FED.R.APP.P. 42(b)).)

The petitioners contend that my decision to grant defendant Davila's motions for sanctions supports the view that "Judge Moore, with monotonous regularity, ... *invites* opposing counsel in cases involving Attorney Rohn to move for sanctions." (Pet. at 19 (emphasis added).) Yet the sole proof submitted to support this accusation are my orders granting part of the defendants' motions to dismiss and granting Davila's motions for sanctions. Neither of these orders invited opposing counsel to move for sanctions. (*See* Pet., Ex. 24–25 (orders from *Anderson III* and *Anderson IV*).) As the record conclusively shows that Davila moved for sanctions on his own initiative, (see Def.'s Supp. Mem., May 15, 1997; Def.'s Second Supp. Mot., Apr. 24, 1997), the petitioners' accusations do not accord with the truth.

Next, the petitioners accuse me of acting improperly in sanctioning Attorney Rohn for abuse of the subpoena process because "there was no showing that the failure was intentional and the evidence was that it was due to a misunderstanding as to what was legally required." (*See* Pet., Ex. 1, at 1.) This is a clear mischaracterization of

the evidence, as I have already observed: "Attorney Rohn's subsequent refusal to comply with the applicable federal regulations after the Customs Service had so carefully pointed out her errors and advised her how to correct them could only have been wilfull." *Anderson v. Government of the Virgin Islands,* 190 F.R.D. 370, 372 (D.Vi.1999); *see also Anderson IV,* 39 V.I. at 247, 180 F.R.D. at 292. My decision to sanction Attorney Rohn provides no grounds for recusal. "A judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence." *Baskin v. Brown,* 174 F.2d 391, 394 (4th Cir.1949).

The petitioners further argue that the *Anderson* case "clearly evidences that in Judge Moore's eyes, Attorney Rohn can do no right, and as a result her clients ... are adversely affected." (Pet. at 19.) Nonsense. My decisions in *Anderson* testify to the fact that I rule in favor of Attorney Rohn and her clients when the facts and law are in their favor. I rejected the defendants' attempts to disqualify Attorney Rohn as Anderson's counsel, determined that Attorney Rohn and her client had been the subjects of unconstitutional police surveillance, entered an injunction in their favor, and refused to stay that order pending appeal. *See Anderson II,* 35 V.I. at 317, 329, 947 F.Supp. at 896, 902. Last September, I again ruled in Anderson's favor by denying defendant Davila's motion for summary judgment. *See Anderson v. Government of the Virgin Islands,* Civ. No.1996–118, slip op. at 6 (D.V.I. St. Croix Div. Sept. 3, 1999). Attorney Rohn's law firm recently *defended* my ruling and persuaded the Court of Appeals to affirm my decision to retain Davila as a defendant. *See Government of the Virgin Islands v. Anderson,* No. 99–3899, slip. op. (3d Cir. Apr. 28, 2000); *see also infra* Section II.11 (identifying another recent instance in which Attorney Rohn's law firm defended my judgment on appeal).[5] In addition to the foregoing, I

---

5. The Court of Appeals for the Third Circuit

also affirmed my grant of summary judgment

merely note that the exhibits filed in support of the recusal motion include no affidavit from Peter Anderson.

Finally, Attorney Rohn complains that I somehow treated her "rudely" because the hearing on her motion for injunctive relief "took 3–4 days and required [her] to pay the necessary airfare to fly witnesses between St. Thomas and St. Croix on a daily basis." (*See* Pet., Ex. 1, at 1.) I viewed Attorney Rohn's motion as an emergency and was able to expedite the hearing by fitting it into my St. Thomas calendar. As my telephone conference with the attorneys on the preceding evening was not recorded, I made the following statement before the emergency hearing began:

> [A]lthough there should have been no confusion because it was always made clear that this hearing would be handled on St. Thomas as my schedule allowed .... [f]or some reason Attorney Rohn believed that it was for St. Croix. And so the subpoenas were for St. Croix. That's why Attorney Rohn made arrangements to get people here.
>
> One of the things that I have said, as police officers testify, and you can get back to St. Croix, ... and Attorney Rohn will bear the cost of that, right?
> MS. ROHN: That's correct, Your Honor.

(Hr'g. Tr. at 15.) The hearing only took two days, and Attorney Rohn's suggestion that I treated her "rudely" is as far from the truth as her claim that the hearing took three or four days.

### 6. *Figueroa v. Buccaneer Hotel, Inc.*

On February 19, 1998, I granted summary judgment to defendant-respondents Buccaneer Hotel, Inc., Companion Assurance Co., and Meridian Engineering, Inc., on plaintiff-petitioner Catherine Figueroa's ["Figueroa"] religion discrimination claim under Title VII of the federal Civil Rights Act of 1964. I found that Figueroa's fed-

eral claim "was frivolous and filed in bad faith" well past the expiration of Title VII's ninety-day statute of limitations, and I ruled that prior case law appeared to foreclose her Virgin Islands Civil Rights Act ["VICRA"] claim. *See Figueroa v. Buccaneer Hotel, Inc.*, Civ. No.1996–015, slip. op. at 2–4 (D.V.I. St. Croix Div. Feb. 19, 1998) (citations omitted), *aff'd and rev'd in part*, 188 F.3d 172 (3d Cir.1999). I accordingly dismissed petitioner Figueroa's entire complaint, including the federal Title VII claim and the local VICRA claim, as well as other strictly local causes of action:

> As the remaining counts state no federal cause of action, this case will be dismissed with prejudice for lack of subject matter jurisdiction. Defendants have moved for costs and such will be awarded under 5 V.I.C. [§ ] 541. This Court finds that at least the Title VII claim was frivolous and filed in bad faith, and this Court invites defendants to move for sanctions under 28 U.S.C. [§ ] 1927.

*Figueroa*, slip. op. at 4. Although the defendants did not move for sanctions, they submitted a bill of costs, which I awarded in a lesser amount, to be paid jointly and severally by Attorney Rohn and her client.

My opinion recounted that the Equal Employment Opportunity Commission ["EEOC"] had warned Figueroa that, if she intended to sue the defendants, she would have to do so "WITHIN NINETY (90) DAYS ... OTHERWISE YOUR RIGHT TO SUE IS LOST." *See id.* at 2 (emphasis in original letter). Figueroa waited almost half a year before suing the defendants in District Court, forcing the defendants to expend costs and attorneys fees to defend an obviously time-barred federal action and local claims that could not be filed in District Court absent a viable federal claim.

---

dismissing the former governor, Roy L. Schneider, from the case. *See Anderson v. Government of the Virgin Islands*, No. 99–

3820, 2000 WL 628168, slip op. (3d Cir. Apr. 21, 2000), *aff'g* Civ. No.1996–118, slip op. at 2–5 (D.V.I. St. Croix Div. Sept. 3, 1999).

The Court of Appeals for the Third Circuit agreed that Figueroa's "failure to file suit within the 90–day time period completely bar[red] her Title VII claim," and that her arguments to the contrary were "unsupported and totally lacking in merit." *See Figueroa*, 188 F.3d at 176. After lengthy discussion, however, the Court of Appeals disagreed with my VICRA analysis and concluded that the statute authorized private suits. Although the appellate panel held that I "acted well within [my] discretion in dismissing Figueroa's territorial claims," it vacated my dismissal of her VICRA claim. *See id.* at 181. This decision voided the award of costs because the defendants were no longer the prevailing parties in District Court on all of the local claims. *See id.* at 183.

The Court of Appeals expressed concern with my use of the phrase "dismissed with prejudice" on Figueroa's other local claims, since this dismissal "for lack of subject matter jurisdiction" was not an adjudication on the merits and should have been "without prejudice." Accordingly, the Court directed me to amend my order to dismiss the local claims "without prejudice." *See id.* at 182. In addition, the Court of Appeals found that, to the extent my award of costs was a sanction for Figueroa's filing of a stale federal claim, I imposed it without giving Figueroa or Attorney Rohn sufficient notice and an opportunity to respond. The Court of Appeals did not find that an assessment of costs was unwarranted, however, and even suggested that I could consider on remand whether an award of fees on the dismissed federal claim would be appropriate under Federal Rule of Civil Procedure 54(b). *See id.* at 182–83.

A fair reading of the Court of Appeals' opinion lends no support to the petitioners' grave accusations of judicial hostility, and could not lead a reasonable person to seriously question my impartiality. For example, petitioners Rohn and Figueroa accuse me of "attempting permanently to deprive the Plaintiff of her constitutional right to a trial on the merits." (*See* Pet. at 5.) The Court of Appeals effectively rejected this view by noting that it "could interpret [my] language 'with prejudice' narrowly as a statement regarding Figueroa's inability to later pursue these claims in federal court." *See* 188 F.3d at 182. Petitioners Rohn and Figueroa further maintain that I "imposed the extreme *sanction* of dismissal with prejudice ... for perceived infractions by Plaintiff's Counsel Attorney Rohn." (*See id.* (emphasis added).) There is nothing in my opinion or the opinion of the Court of Appeals to suggest that I dismissed Figueroa's other local claims as a sanction. To reiterate, I dismissed both the federal and local causes of action, other than the VICRA claim, solely for lack of jurisdiction, and the Court of Appeals for the Third Circuit upheld the dismissal.

The Court of Appeals found grounds for reversal in *Figueroa*, not for recusal. It affirmed my rulings on most of the plaintiff's claims, reversed my grant of summary judgment on one claim, and resolved ambiguities in the summary judgment order and fee award in the plaintiff's favor. The *Figueroa* panel's opinion does not evidence any perception of bias or animosity toward Attorney Rohn on my part. Neither my summary judgment and fee award orders nor the appellate panel's decision to amend and reverse part of those orders provide any grounds for recusal. *See Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990) (perceiving no appearance of bias in trial court's imposition of personal sanctions upon attorney without due process of law); *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir.1980); *Mayberry v. Maroney*, 558 F.2d 1159, 1162–63 (3d Cir.1977) (rejecting any inference of partiality based on errors committed by trial court); *Stephen v. Antigua Brewery, Ltd.*, 88 F.Supp.2d 422, 425 (D.Vi.2000) ("errors sometimes arise out of judicial proceedings, but they do not generally provide grounds for recusal"); *see also Barnett v. City of Chicago*, 952 F.Supp. 1265, 1271 (N.D.Ill.1997) (recog-

nizing that reversal of trial court's dismissal order does not bring judge's impartiality into question).

### 7. *Griffith v. Hess Oil Virgin Islands Corp.*

In 1998, Attorney Rohn also represented Bernard Griffith and other former HOVIC employees ["*Griffith* plaintiffs"] in a civil rights suit against HOVIC and its parent company, Amerada Hess Corp. ["AHC"]. Less than three months after my decision in *Figueroa*, on May 14, 1998, I denied HOVIC and AHC's motion to dismiss the *Griffith* plaintiffs' case. *See Griffith v. Hess Oil V.I. Corp.*, 39 V.I. 199, 206, 5 F.Supp.2d 336, 340 (D.Vi.1998). In reaching this decision, I relied on a recent opinion that I received by mail from Attorney Rohn's office. *See Griffith*, 39 V.I. at 206–07, 5 F.Supp.2d at 339 (discussing *Charles v. HOVIC*, Civ. No.1994–081, slip. op. (D.V.I. St. Croix Div. Dec. 8, 1997) (Finch, J.)).

Opposing counsel at the law firm of Bryant, White & Barnes, P.C., whose successor firm appears in the current proceedings, urged me to disregard this "unauthorized communication" and moved for sanctions in "the high five figures." Attorney Rohn's office filed a counter-motion for sanctions, describing this motion as "legal harassment," "an abuse of the legal process," and an "unbelievable demonstration of . . . 'chutzpah.'" *See* 39 V.I. at 205–06, 5 F.Supp.2d at 339–40.

I *refused* to impose sanctions upon Attorney Rohn's law firm or clients even though her office's counter-motion plainly employed "unenlightening, . . . unnecessary and undignified" language. *See* 39 V.I. at 205, 5 F.Supp.2d at 340. Rather, I *granted* her client's counter-motion to sanction opposing counsel for "attempting to prevent the Court from considering an earlier decision on parallel facts."[6] Viewed in light of this published decision, the petitioners' assertion that "there has not been a case where Judge Moore has not . . . gone out of his way to heap sanctions upon [Attorney Rohn] or her clients," (Pet. at 31), demonstrates a lack of respect for the truth.

### 8. *Caledonia Springs, Inc. v. Royal Insurance of Puerto Rico, Inc.*

According to the petitioners, my August 13, 1998, decision in *Caledonia Springs, Inc.* reflects my "patent inability to be impartial in any matter . . . in which Attorney Rohn is counsel of record." (Pet. at 17.) They charge that I, "once again, eschewed established precedent, [and] violated counsel and her client's constitutionally protected rights." (*See id.* at 12.) A dispassionate review of the record reveals that these accusations are unfounded. My decision reveals no "deep-seated . . . antagonism," see *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147, and would not cause reasonable and well-informed observers to doubt my impartiality.

Caledonia originally brought suit in Territorial Court in August, 1996, against only one defendant, Royal Insurance of Puerto Rico, Inc. ["Royal P.R."], for bad faith, breach of contract, and other acts related to its insurance claims for hurricane damage. Royal P.R. removed the case to this Court. (*See* Def.'s Notice of Removal, Civ. No.1996–111 (St. Croix Div. Aug. 23, 1996).) As early as mid-January, 1998, Attorney Rohn planned a trip to Europe for the first ten days of April, 1998, and sought Royal P.R.'s assistance in deposing persons related to the case while she was in England. (*See* Exs. to Pl.'s Mot., Mar. 17, 1998.) When Royal P.R. asserted that it was unable to arrange for depositions of some of these witnesses because they were citizens and residents of Great Britain who

---

**6.** The Court imposed a $500 fine on Attorney Beth Moss, payable "from her personal funds and not passed on to her clients in any form or fashion." *Id.* When the law firm later demonstrated that Attorney Moss was not responsible for the offending motion, I voided the sanction against her and imposed it instead on Bryant, White & Barnes, P.C. (*See* Order, Civ. No.1995–104 (St. Croix Div. Oct. 10, 1998).)

were neither employed by Royal P.R. nor otherwise subject to the District Court's jurisdiction, Caledonia asked the magistrate judge to compel their attendance. (*See* Pl.'s Mot., Mar. 17, 1998.)

Caledonia's motion to compel, filed less than two weeks before Attorney Rohn was to leave on her long-scheduled trip to Europe, is the first recorded mention of an intent to depose Andrew Gentry ["Gentry"], a foreign citizen who worked for another company, Royal Insurance International, Ltd. ["Royal International"], in London, England. (*See id.* at 2.) Attorney Rohn filed this motion to compel before attempting to personally notify Gentry of the proposed deposition. (*See* Pl.'s First Notice, Mar. 18, 1998.)[7] In response to Caledonia's motion to compel, Royal P.R. restated that neither Gentry nor Royal International were defendants or otherwise subject to the District Court's jurisdiction, and pointed out that Caledonia had not complied with Federal Rule of Civil Procedure 28 to require Gentry to appear as a witness for the foreign deposition.[8] (*See* Def.'s Opp'n, Mar. 19, 1998.)

After a pre-trial conference, the magistrate judge summarily ordered that "Andrew Gentry will be produced for deposition as noticed, Mr. Gentry being a person with supervisory authority over the management of the claim presented to Royal Insurance Co. of Puerto Rico." (Order, Már. 20, 1998.) Royal P.R. appealed this ruling and the magistrate judge's subsequent denial of a stay to the district judge.

---

**7.** The date ultimately noticed for the deposition was April 9, 1998. (*See* Pl.'s Second Am. Notice, Mar. 21, 1998.)

**8.** Federal Rule of Civil Procedure 28(b) provides that "[d]epositions may be taken in a foreign country ... pursuant to any applicable treaty or convention." FED.R.CIV.P. 28(b)(1). The Supreme Court has held that "service in accordance with the Hague Convention is mandatory, wherever that Convention applies." JOHN B. CORR ET AL., FEDERAL CIVIL RULES HANDBOOK 152 (7th ed.1999) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988)) ["CORR"]; *see also* CORR,

(*See* Def.'s Appeal, Apr. 3, 1998; Def.'s Appeal, Mar. 27, 1998.) In a letter transmitted by facsimile to counsel for Royal P.R. on April 3, 1998, Gentry's solicitors at Jones, Day, Reavis & Pogue ["Jones Day"] took the position that Caledonia's notice of deposition was "entirely ineffective in respect of Mr. Gentry, who is not a party to the litigation and who resides outside the United States." The solicitors further advised that Gentry "would not appear to give a deposition in this matter unless he is ordered to comply with a valid order of the English High Court that he should do so, pursuant to the Evidence (Proceedings in other Jurisdictions) Act of 1975 and the Hague Evidence Convention." (Pet., Ex. 15.)

In Caledonia's written response, dated April 7, 1998, Attorney Rohn conceded that the District Court did not have jurisdiction over Gentry, but contended that the court did have jurisdiction over Royal International, even though Caledonia had not named Royal International as a defendant. Attorney Rohn then purported to predict what I would do if Royal International did not produce Mr. Gentry and threatened "Royal" with that prophesy. She stated:

> Should Royal refuse to obey the Court's order, then I will move the Court to hold them in contempt, which would range from a fine, to a requirement that Mr. Gentry travel to the U.S. Virgin Islands to be deposed.
>
> . . . .

---

*supra,* at 493–94 ("In some countries, the taking of evidence under unauthorized procedures may subject the interrogator to severe—even criminal—sanctions. Before taking such evidence, a practitioner should consult the Hague Convention and all treaty supplements thereto."). Even a quick glance at the Hague Convention reveals that the United Kingdom subscribes to this treaty. *See* 28 U.S.C.A.Supp. to FED.R.CIV.P. 4, *reprinted in* FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES 72 (2000) ("Her Majesty's Principal Secretary of State for Foreign Affairs is designated as the Central Authority").

I really don't know what your Mr. Gentry has to hide. I would suggest that his appearance for a brief, factual deposition of an hours length, as scheduled, rather than his later being forced to come to the Virgin Islands, as a result of a contempt of Court's order against Royal Puerto Rico would be preferable.

(*See* Pet., Ex. 17 (Letter from Attorney Lee J. Rohn to "Jonas Day" (Apr. 7, 1998)).)

Thereafter, Caledonia served Gentry with a facially invalid subpoena purporting to issue from the "United States District Court Knightsbridge District of London," and demanded that he appear for a deposition on April 9, 1998. (*See* Resp't's Opp'n, Feb. 9, 2000, at 32.) [9] Attorney Rohn referred to this invalid subpoena in her April 7th letter, stating that "Mr. Gentry has been properly served a subpoena by an English process server to attend the deposition." (*See* Pet., Ex. 17.) Gentry's solicitors responded to this letter by reminding Attorney Rohn that their client still had not received proper service of process:

[Gentry] will, of course, comply with any valid order issued by a court having jurisdiction over him.

. . . .

Should you wish to obtain evidence from our client, we suggest that you comply with the appropriate procedures that are set forth in the Federal Rules of Civil Procedure and in 28 U.S.C. § 1781 *et seq.*

(*See* Pet., Ex. 16.) Gentry's deposition did not take place on April 9, 1998.

Caledonia then moved for sanctions against Royal P.R. (*See* Pl.'s Mot. for Sanctions, Apr. 27, 1998.) [10] Royal P.R. responded that "it is Plaintiff's conduct that is sanctionable in this instance," citing Caledonia's April 7th letter, its invalid sub-

poena, and its persistent failure to properly serve the proposed deponent with process under the Hague Convention and the Federal Rules of Civil Procedure governing service of process on persons in foreign lands. (*See* Def.'s Opp'n, Apr. 30, 1998, at 1–4.) Earlier, Royal P.R. had requested that Caledonia be required to "pay defendant's expenses to attend said deposition, including reasonable attorney's fees" if Caledonia established "personal jurisdiction over Mr. Gentry and satisfie[d] the procedures for a foreign deposition." (*See* Def.'s Mem., Mar. 27, 1998, at 9–10.)

On August 13, 1998, I partially granted and partially denied Royal P.R.'s appeal of the two magistrate judge orders. As the petitioners claim that this decision reflects my blind, irreparable prejudice against them, I will reproduce the pertinent part of my previously-unpublished ruling below.

Jones Day responded to the letter on April 14, referring to the "threats contained in [plaintiff's counsel's] letter [as] both unfounded and offensive" a description this Court finds charitable. The letter also referred to a form subpoena served on Mr. Gentry which had been filled in by plaintiff's counsel captioned under the header **"United States District Court Knightsbridge District of London"** dated March 19. Jones Day pointed out that "[n]o such court exists," a point this Court, which does exist, can take judicial notice of.

As a sanction for this unprofessional conduct, the Court is inclined to bar plaintiff from attempting to depose Mr. Gentry. In fairness to the plaintiff, however, the Court must allow the facts to surface. It can quite fairly be said that Mr. Gentry is not an employee of a mere non-party, but that he was acting as either an employee of Royal PR in his

---

9. The petitioners dismiss this patently fraudulent subpoena as a "scrivener's error" without acknowledging that it bears Attorney Rohn's signature. (*See* Pet. at 17.)

10. While this motion was pending, and more than a month after the requested deposition, Caledonia moved to amend its complaint to name Royal International's successor, Royal Sun Alliance, as a defendant. (*See* Pl.'s Mot. to Amend, May 15, 1998.)

involvement with this matter, or that Mr. Gentry's acts blurred the line between Royal PR and Royal International to the extent that, for these purposes, the latter can be considered an alter ego of the other.

Therefore, in the interest of fairness and judicial economy, plaintiff's counsel can depose Mr. Gentry pursuant to, and only pursuant to, the Hague Convention. If plaintiff's counsel chooses to depose Mr. Gentry, it will be at her expense and at a convenient time and place for Mr. Gentry. Finally, defense counsel and counsel for Mr. Gentry should provide a copy of its expenses in dealing with this matter to both the Court and plaintiff, who shall bear such costs.

*Caledonia Springs, Inc. v. Royal Ins. Co. of Puerto Rico, Inc.,* Civ. No.1996–111, slip. op. at 1–4 (D.V.I. St. Croix Div. Aug. 13, 1998) (emphasis in original).

I denied Caledonia's motion for sanctions against Royal P.R. because Royal P.R. articulated substantial grounds for its conduct: The magistrate judge had erred in requiring Royal P.R. to produce Gentry; as Attorney Rohn had conceded, Gentry was not subject to the jurisdiction of this Court; and Caledonia was not entitled to compel Gentry's compliance with a deposition notice that Attorney Rohn had not properly served on him. Consequently, my ruling to modify the magistrate judge's order and deny Caledonia's motion for sanctions was compelled by the facts and the law.

I assessed costs against Caledonia and required Attorney Rohn to bear the expenses of Gentry's deposition because Attorney Rohn's conduct on Caledonia's behalf appeared unprofessional and actuated by bad faith. Both the April 7th letter, in content and as addressed to "Mr. Jonas Day," and the false subpoena purporting to issue from the "United States District Court Knightsbridge District of London" support this view. My ruling of August 13, 1998, is not grounds for judicial disqualification. *See, e.g., United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) (concluding that recusal was not warranted where judge's adverse attitude toward defendant was based on study of facts, depositions, and briefs) (section 144 case); [11] *Yagman v. Republic Ins.,* 987 F.2d 622, 625 (9th Cir.1993) (recognizing that imposition of sanctions does not necessitate recusal and concluding that trial judge's repeated abuse of discretion did not warrant recusal motion); *see also United States v. Franks,* 511 F.2d 25, 37 (6th Cir.1975) (noting that judges may preside over cases involving persons that they have cited for contempt) (citations omitted); *Honneus v. United States,* 425 F.Supp. 164, 166 (D.Mass.1977) (holding that referral of attorney to disciplinary committee does not create appearance of bias). I weighed the facts and applied my understanding of the law. My ruling did not display a "deep-seated favoritism or antagonism," and did not imperil the appearance of justice.

Attorney Rohn and Caledonia perceive judicial animus in the timing of my decision. They complain that I deliberately ignored the appellate brief and motion for recusal filed by petitioner Figueroa when I sanctioned Attorney Rohn in this case. My order imposing sanctions in *Caledonia Springs, Inc.,* was issued two months *before* Figueroa filed her appellate brief on October 13th, *and three months before* Figueroa filed her recusal motion on November 12, 1998. (*See* Order, Aug. 13, 1998.) Once again, the petitioners are mistaken.

### 9. *Domino Oil, Inc. v. Phoenix Assurance Co.*

Attorney Rohn did not represent plaintiff-petitioner Domino Oil, Inc. ["Domino"],

---

**11.** This Memorandum occasionally refers to cases decided under section 144 as well as section 455 of title 28, *United States Code,* because those two statutes employ the same standard for determining whether bias or prejudice is apparent. See *Johnson,* 629 F.2d at 291; In re *International Bus. Mach. Corp.,* 618 F.2d 923, 928 (2d Cir.1980).

on April 16, 1998, when I dismissed its breach of contract action against defendant-respondent Phoenix Assurance Co. ["Phoenix"] after full briefing and a hearing. Nevertheless, the petitioners advance this decision as grounds for blanket recusal from all of Attorney Rohn's cases.

My first written decision in *Domino Oil, Inc.* cannot have stemmed from my alleged bias toward Attorney Rohn because she did not yet represent the plaintiff. In this first, unpublished decision, I noted that

[m]uch fact intensive squabbling has [occurred]. Phoenix has denied [Domino's] claim in full based on the alleged fraud in submitting the re-processing claim. Domino has filed suit alleging breach of the implied covenant of good faith and fair dealing and requests punitive damages. Phoenix has in turn cross-claimed for its $150,000 advance. Phoenix filed a motion to dismiss the bad faith claim, to which Domino responded and filed a cross-motion for summary judgment.

*Domino Oil, Inc. v. Phoenix Assurance Co.*, Civ. No.1996–099, slip. op. at 2 (D.V.I. St. Croix Div. Apr. 16, 1998) ["*Domino I*"]. After denying Domino's motion for summary judgment, I considered Phoenix's motion to dismiss and, "[b]ased on the same facts recited ... in denying summary judgment to plaintiff," concluded that New York law applied. I granted Phoenix's motion and dismissed Domino's second amended complaint *without prejudice* because the complaint did not sufficiently "plead fraud, a high degree of moral turpitude, wanton dishonesty and criminal indifference to civil obligation which is aimed at the public generally," as required under New York law. *See id.* at 5.

After Attorney Rohn appeared as Domino's counsel, I *granted* her motion to reconsider this decision and reinstated Domino's complaint for compensatory damages, but not for punitive damages. *See Domino Oil, Inc. v. Phoenix Assurance Co.*, Civ. No.1996–099, slip. op. at 2–3 (D.V.I. St. Croix Div. Aug. 18, 1998) ["*Domino II*"]. I

agreed with Attorney Rohn that "application of [*Restatement (Second) of Conflicts*] section 193 puts further emphasis on the location of risk and swings the balance in favor of application of Virgin Islands law," and reversed my dismissal of all but the punitive damages claim.

However, while the complaint survives the motion to dismiss generally, the punitive damages claim does not. Because of the submissions to the Court outside of the pleadings the Court can properly consider the motion to dismiss a motion for summary judgment and will do so for the limited purpose of the punitive damages claim.

*See id.* at 2–3. The petitioners criticize this decision and claim that my "bias towards [Attorney Rohn] is so deep-seated that the patent inconsistency in my findings eludes [me]." (*See* Pet. at 20–21 n. 15.) This criticism is completely irrational. As previously explained, Attorney Rohn was not Domino's counsel when I issued my first decision, and my modification of these "findings" in *Domino II* actually benefitted her client by reinstating most of the complaint. Far from "reflect[ing][my] obvious bias and antipathy" toward Attorney Rohn, (*see id.* at 4 n. 8), my decision in *Domino II* reveals that I resolve her motions on the merits.

Domino moved for partial reconsideration of my reinstatement of the complaint, arguing that I erred in striking its claim for punitive damages, and that I should have afforded advance warning of my decision to treat Phoenix's motion to dismiss as one for summary judgment. (*See* Pl.'s Mot., Sept. 1, 1998.) I rejected these arguments in a third previously unpublished opinion, reproduced in part below:

Domino's primary claim to error is its inability to obtain sufficient discovery on its bad-faith claim due to the entry of a protective order more than a year before Phoenix filed its motion to dismiss. The record shows, however, that Domino had more than ample opportunity to conduct discovery to oppose defendant's

motion. Domino had Phoenix's responses to its twenty six interrogatories, ten of which applied specifically to the allegations of fraud. Additionally, Phoenix deposed Dru McCarthy, Phoenix's 30(b)(6) witness, and Michael Donnelly, the claims adjuster before the protective order was entered. One of the grounds for Domino's Motion for Additional Extension of Time to Respond to the motion to dismiss,[footnote 2] was a request for more time to digest the 30(b)(6) deposition as "it is extremely long, with exhibits comprising approximately seven hundred fifty (750) pages."

Footnote 2: Filed February 28, 1997, a full year before the entry of the protective order.

Further, Domino's filings in this case are fact-intensive, to say the least. Finally, plaintiff chose not to file a Rule 56(f) motion.[footnote 3]

Footnote 3: Federal Rule of Civil Procedure 56(f) provides that if a party opposing a motion cannot present sufficient facts to justify its opposition, the opposing party may file affidavits to that effect. The court may then deny the underlying motion or grant a continuance to allow the opposing party time to develop the factual basis for its opposition.

The Court finds no support for Domino's contention that discovery has been *"very limited"* and "extremely curtailed" (Motion at 10). On the contrary, plaintiff had ample opportunity to properly defend against the motion, or to advise the Court of its inability to do so without more time through Rule 56(f).

12. The petitioners selectively and misleadingly summarized my opinion as follows:

Plaintiff again moved for partial reconsideration on erroneous and improper findings of facts on a 12(b)(1) motion. Though Judge Moore found that he had converted without notice, a 12(b) motion to a judgment on the merits, see Exhibit "26," [*Domino II*] at p. 3, and Exhibit "27," [*Domino III*] at p. 2, and though he acknowledged that discovery had been stayed, Judge Moore entered summary judgment on Plaintiff's punitive damage claim on a less than complete record, stating that

Domino's suggestion that the Court was required to give notice that the motion to dismiss would be treated as one for partial summary judgment is totally without merit. First, Domino itself referred numerous times in the pleadings to the motion as a motion for summary judgment.[footnote 4]

Footnote 4: Indeed, as Phoenix points out, "on page 29 of its opposition brief, Domino goes so far as to direct the Court that this, indeed, was a motion for summary judgement because of the submission of extraneous materials. In addition, on no fewer than six occasions in its opposition brief, Domino refers to the motion as being one for summary judgment."

Moreover, plaintiff presented many matters outside the pleadings to the Court.[footnote 5]

Footnote 5: The pleadings on the motion for reconsideration (the re-reconsideration of which is the subject of the pending motion) alone included 10 exhibits totaling 57 pages. The underlying motion to dismiss contained 10 exhibits, amounting to hundreds of pages and requiring an entire manila folder for that pleading alone. A separate motion to dismiss the punitive damages claim contained another 11 exhibits. Domino's opposition was 58 pages, a large portion of which was factual quotes from Mr. Donnelly's deposition; 12 exhibits totaling over one hundred pages accompanied the opposition, including large portions of several depositions.

*Domino Oil, Inc. v. Phoenix Assurance Co.*, Civ. No.1996–099, slip. op. at 1–4 (D.V.I. St. Croix Div. Dec. 21, 1998) ["*Domino III*"]. The petitioners' motion omits and distorts parts of this opinion in a brief "hit and run" footnote, also reproduced below.[12] Reasonable observers

"Plaintiff chose not to file a Rule 56(f) motion." The Court failed to explain how Plaintiff would know to file such a motion when the Court had given no notice that it was converting the rule 12 motion to a Rule 56 motion. *Id.*, at p. 3. Although plaintiff presented the Magistrate's Orders limiting discovery and evidence of the Defendant's refusal to answer questions related to punitive damages because of that stay, Judge Moore reasoned inexplicably, that "the Court finds no support for Domino's contention that discover has been 'very limited,' and 'extremely curtailed.' " *Id.* And

would not rely on this selective and misleading summary of my most recent written decision in the *Domino Oil, Inc.* case as evidence of judicial bias against Attorney Rohn. While I did not rule in Domino's favor, adverse judicial decisions are not grounds for recusal. *See, e.g., Johnson,* 629 F.2d at 291.

Lastly, Domino's President, César Cortés García ["García"], avers that I "imposed sanctions in [this] case without notice and a hearing." (*See* Pet., Ex. 7.) This is an utter falsehood. I did not impose sanctions against García, Domino, or Attorney Rohn. I conducted a hearing on Phoenix's motion to dismiss and fully considered Domino's opposition before dismissing its complaint. *See Domino II,* slip. op. at 1. I reject petitioner García's subjective and false affidavit as evidence of my lack of impartiality. *See Sciarra,* 851 F.2d at 625; *see also In the Matter of Searches Conducted on March 5, 1980,* 497 F.Supp. 1283, 1287 (E.D.Wis.1980) (noting that the judge "is not constrained to accept the conclusions or opinions of the affiant and may consider the facts alleged in their proper context," even under 28 U.S.C. § 144); *United States v. Corr,* 434 F.Supp. 408, 413 (S.D.N.Y.1977) (commenting that

although acknowledging the Domino Plaintiff's claim and affidavit of incomplete discovery (which could have been accepted as a Rule 56(f) motion), Judge Moore nonetheless dismissed the claim finding that "Plaintiff had ample opportunity to defend against the motion, or to advise the Court of its inability to do so without more time through a Rule 56(f) motion." *Id.* (*See* Pet. at 20–21 n. 15.)

**13.** The terms of the *Saldana* sanctions order are as follows:

**ORDERED** that Kmart's motion for sanctions against Attorney Lee J. Rohn for her repeated use of the word "fuck" during judicial proceedings and her other uncivil conduct toward fellow attorneys and expert witnesses is **GRANTED.** Attorney Rohn shall attend in person and satisfactorily complete a seminar on civility in the legal profession within twelve months after the entry of this Order. This seminar must be sponsored or offered by a law school accredited by the American Bar Association

recusal based on affiant-litigant's subjective beliefs would allow parties to disqualify judges at will).

### 10. *Saldana v. Kmart*

Last December, I imposed monetary and non-monetary sanctions on Attorney Rohn "based on her habit of using the word 'f**k' to routinely express[ ] her displeasure or disagreement ... [during] judicial proceedings," as well as calling a defense "expert witness a 'Nazi' in writing" in a District Court case after she had won it. *See Saldana,* 84 F.Supp.2d at 637, 640. The petitioners claim that this sanctions ruling "demonstrates [a] lack of impartiality, and evinces such a virulent personal bias toward counsel ... as to justify blanket disqualification of the judge in all of Attorney Rohn's cases." (Pet. at 22.) Although the full opinion imposing sanctions upon Attorney Rohn is published, I repeat pertinent portions of my opinion and order in rebuttal of this claim. A dispassionate and objective review reveals that the sanctions I imposed were measured and appropriate for the misconduct,[13] that the sanctions evince no person-

or a reputable provider of continuing legal education. Once completed, Attorney Rohn shall file an affidavit with the Court so attesting. It is further

**ORDERED** that Attorney Rohn shall send letters of apology to all the lawyers she demeaned and insulted by her vulgarity and abusive conduct in the District Court cases referred to in the attached Memorandum. Attorney Rohn also shall apologize in writing to the deposition and trial witnesses as well as the court reporters present at these judicial proceedings. Attorney Rohn shall at the same time file copies of these letters with the Court. It is further

**ORDERED** that Attorney Rohn shall notify the ethics committee of each bar of which she is a member by providing each with a copy of this Order. It is further

**ORDERED** that Kmart file an affidavit of attorney's fees and costs associated with bringing its motion for sanctions within twenty days after the date of this Order. Attorney Rohn shall file any response within ten days thereafter. The Court thereafter will enter an order requiring Attorney Rohn

al prejudice or bias against Attorney Rohn, and that this decision would not cause a reasonable, well-informed observer to question my impartiality.[14]

I approached the distasteful task of weighing Kmart's motion for sanctions with equanimity. During the sanctions hearing, I stated: "I applaud your representation, your efforts Attorney Rohn to get these words out of your vocabulary." (Tr., Civ. No.1995–090, at 50 (D.V.I. St. Croix Div. Oct. 28, 1997).) Later, I specifically recognized her continuing efforts:

> To her credit, Attorney Rohn acknowledged at the hearing that her conduct was not appropriate behavior for a member of the Bar and promised to

> to reimburse Kmart for its reasonable fees and costs in pursuing the motion.

14. To assist the reader in assessing the appropriateness of the sanctions, I reproduce "the instances of counsel's misconduct [that demonstrated] the necessity for sanctions and underscore the incivility of Rohn's behavior":

> a. During the course of the telephone deposition of a witness, the following exchange took place between Rohn, Attorney Beth Moss, a Virgin Islands attorney, and Attorney Todd Newman, another Virgin Islands attorney who participated by telephone:
> Rohn: While we're waiting, let's identify who we represent. I'm Lee Rohn, I represent the Plaintiff.
> Moss: Beth Moss for the Defendants.
> Rohn: Who do you represent, Todd? (Respite)
> Rohn: Todd, *I don't want to fuck around.*
> Newman: I'm corporate counsel for UDCI, and I'm just really here to try to help set this thing up.
> b. In a deposition conducted a few months later, the following dialogue took place between Attorney Rohn and Attorney Neal L. Schonhaut:
> Q (Schonhaut): Is it fair to say that during the 23 years of doing undercover surveillance you have continuously made efforts to conceal your efforts at a subject's—
> Rohn: Objection. Leading question.
> Schonhaut: Not one of those has been leading.
> Rohn: It has.
> Schonhaut: You are just cluttering up the record.

work on removing the use of the word f**k from her vocabulary. To her further credit, no one has submitted any subsequent instances of Attorney Rohn's use of profanity during depositions or communications with other counsel during the all too extended length of time the Court has had this motion under consideration. To some extent, then, the delay in the Court's decision has been to Attorney Rohn's benefit as the sanction that would have been imposed at the time of the hearing would have been more severe and has been tempered in light of Attorney Rohn's apparent success at cleaning up her vocabulary.

> Rohn: I will put my remarks on the record as I'm entitled. I don't need to be lectured by you, sir. *Don't fuck with me.*
> Schonhaut: Just listen.
> Rohn: I can make every objection—
> Schonhaut: It's a formal objection. I would like an opportunity to clear it up.
> Rohn: You are not the judge in this case. I don't think you make that determination, although you always act like you do. I will make all the objections that I want.
> Schonhaut: I will clear up form questions, but you are making improper objections.
> Rohn: I don't care what you do. We can continue this or not.
> Attorney Rohn has exhibited similar conduct in her dealings with other members of the bar:
> c. During a telephone conversation, Rohn screamed at Attorney Beth Moss to "just get me the fucking phone numbers" for an upcoming deposition.
> d. During a conversation with Attorney Andrew Simpson arising in this case, Rohn told Simpson "you know Andy, go fuck yourself."
> e. After a jury verdict returned in favor of her client, Attorney Rohn sent a letter to a defense expert witness stating the following:
> > Since you threw down the gauntlet, I thought you would be interested in knowing what the jury decided. The jury awarded Ms. Bell $475,000. They discounted your testimony completely and felt you were pompous and arrogant. I did concur with one of the jurors who referred to you as a Nazi.

*Saldana,* 84 F.Supp.2d at 637–38 (citations and footnotes omitted).

... The task is also distasteful because Rohn is otherwise a very talented and successful trial attorney who has no need to engage in such behavior.

*Saldana*, 84 F.Supp.2d at 640. Contrary to the petitioners' subjective and selective assertions, my decision in *Saldana* does not support a claim of personal antagonism or hostility toward Attorney Rohn, Marie Saldana, or any of the other petitioners.

The petitioners contend that I "eschewed the requirements of due process ... to sanction Attorney Rohn." (*See* Pet'rs' Reply, Apr. 3, 2000, at 8.) The record does not support this conclusion. *See Saldana*, 84 F.Supp.2d at 640 n. 19. Attorney Rohn was aware of the rule under which the Court might impose sanctions. Kmart informed Attorney Rohn that it sought sanctions against her for "'violating the fundamental precepts of legal ethics.'" (See Def.'s Mot. for Sanctions, May 16, 1997, at 1 (quoting In re *Tutu Wells*, 31 V.I. 175, 181 (D.V.I.1994)).) Kmart invoked Local Rule of Civil Procedure 83.2, which authorizes the Court to investigate misconduct, and to admonish, suspend, or disbar District Court attorneys "for good cause shown ... after notice and opportunity to be heard." *See* LRCi 83.2(b)(4)(A). Moreover, the petitioners themselves argue that I was "required to follow the mandate of Local Rule 83.2." (*See* Pet. at 25.) My decision expressly relied on this rule:

In her capacity as a practicing member of the Bar of the District Court of the Virgin Islands, Attorney Rohn must abide by the Rules of Professional Conduct of the American Bar Association ["ABA"]. See LRCi 83.2(a)(1). If Attorney Rohn fails to follow these Rules, she

is subject to disbarment, suspension from practice before this Court, reprimand, or subject to such other disciplinary action as the circumstances may warrant. See LRCi 83.2(b)(4)(A).[15]

*See Saldana*, 84 F.Supp.2d at 639.

Further, in response to a question posed by opposing counsel, Attorney Rohn testified that she knew before the hearing on Kmart's motion for sanctions that she could be suspended or disbarred:

Q: Attorney Rohn, in your letter ... you did state that if your office wants to attack me then you should not expect accommodation?

A: *Yes. You were trying to take my license to practice law away.*

(*See* Tr., Oct. 28, 1997, at 46 (emphasis added).)

Yet the petitioners maintain that I made a "gross misstatement of the record" when I declared in *Saldana* that

Rohn clearly was aware of the possible range of sanctions that the Court could impose. Her counsel argued in favor of an admonishment, while Attorney Rohn herself acknowledged the possibility of suspension or disbarment. (Hearing Tr. at 31, 36 (Oct. 28, 1997)) ("[Counsel for Kmart] asked that my license to practice law be suspended for 6 months if not revoked....").

(*See* Pet'rs' Reply, Apr. 3, 2000, at 11, 10 (quoting *Saldana*, 84 F.Supp.2d at 640 n. 19).) The statements that I am accused of grossly misstating in my opinion appear in the record; only my page references were incorrect. Attorney Rohn's counsel at the hearing did argue in favor of an admonishment as follows:

(B) An act or omission by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violates the applicable Rules of Professional Conduct referred to in Rule (a)(1) shall constitute misconduct and be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

---

**15.** The text of LRCi 83.2(b)(4) follows:
*Standards for Professional Conduct*
(A) For misconduct defined in these Rules and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subject to such other disciplinary action as the circumstances may warrant.

However, as I said at the beginning, Your Honor, I believe that this is not an appropriate case for an imposition of a sanction *per se*.

To the extent this Court might wish to admonish this type of behavior that is one thing, but I believe given the record here, the very skimpy record, I believe anything else wouldn't be appropriate.

THE COURT: I don't know how skimpy the record is . . . .

(*See* Tr., Oct. 28, 1997, at 37.) Attorney Rohn did testify that opposing counsel had "asked that my license to practice law be suspended for six months if not revoked." (*See id.* at 42, 46–47.) My *Saldana* opinion thus did not misrepresent the record, and the petitioners' contention that it did is the quintessence of desperation and over-reaching.

The petitioners also complain that I "improperly considered evidence from other cases and improperly weighed evidence, to sanction Attorney Rohn." (*See* Pet'rs' Reply, Apr. 3, 2000, at 8.) They assert that Attorney Rohn and her counsel had no inkling that I might consider her alleged misconduct and use of expletives or gutter language in other District Court cases in determining whether her conduct in the *Saldana* case warranted sanctions. (*See id.* at 7–10.) My scheduling order did state that the sanctions hearing would "be limited solely to the issue of Attorney Rohn's behavior in this case." (*See* Order, Aug. 17, 1997.) At the beginning of the hearing, however, I clarified this order for Kmart's counsel:

THE COURT: That's what I was afraid of. ˙My earlier remarks—I'm not—I don't mean to limit the scope of the hearing. We're talking about what attorney Rohn has done in the district court.

[COUNSEL FOR KMART]: But not limited to this case.

**16.** Attorney Rohn's counsel had sought to have other local attorneys testify to the use of

THE COURT: Not the facts of this particular case. What I'm talking about, I'm not interested in hearing what other attorneys do.

(*See* Tr., Oct. 28, 1997, at 7.) [16] Attorney Rohn's counsel understood the scope of the hearing:

[COUNSEL FOR ROHN]:˙ Excuse me, I hate to object. I thought that Your Honor was—had restricted this to district court matters.

[COUNSEL FOR KMART]: I stand corrected.

(*See id.* at 9.) The petitioners omitted this portion of the transcript from their reply pleading. (*See* Pet'rs' Reply, Apr. 3, 2000, at 7–10.) When Attorney Rohn's counsel subsequently claimed to be confused by the scheduling order, I reiterated the scope of the hearing:

[COUNSEL FOR ROHN]: Your Honor, may I ask, at this point I must confess that I am now confused by your ruling.

Am I to understand that these other alleged acts in other district court matters are going to form a part of this hearing?

Because if so I would like to render my strongest objection. I understand that we were limiting the inquiry to what had occurred within the four corners of this case, not what may or may not have happened [in other district court cases].

THE COURT: No. That's not my ruling. What I had intended to convey, and obviously I didn't do it very well at the outset, is that I'm not interested in what other attorneys may—how they may conduct themselves.

But it seem to me from what I read, and the motion and the opposition, and the reply, if there's anything to this it would amount to a pattern of conduct on attorney Rohn's part.

profanity. (*See id.* at 3.)

[COUNSEL FOR ROHN]: Well, Your Honor, if that is Your Honor's wish I would have to request—Well, number one, I would of course object to the record.

But number two, I would then ask for the opportunity then to present evidence to Your Honor concerning the circumstances and background of all of these other so called district court matters.

For example, you know Williams v. Rene, attorney Rohn herself was never admonished. There was never conduct that Ms. Rohn did that she was admonished for. I think that's the issues that have been brought up.

THE COURT: Then you can do that.

[COUNSEL FOR ROHN]: All right.

(See Tr., Oct. 28, 1997, at 9–10.) After further discussion, the parties fully and thoroughly examined Attorney Rohn's misconduct in other district court cases as alleged in Kmart's pleadings and countered by Attorney Rohn in her previously-filed opposition.

As I have shown, Attorney Rohn and her counsel knew the scope of the hearing, and were aware of the severity of the potential sanctions. To the extent my scheduling order may have caused any confusion, I specifically gave Attorney Rohn and her counsel every opportunity to respond to Kmart's allegations through testimony, other evidence, and oral argument. Attorney Rohn and her counsel availed themselves of that opportunity at the hearing,[17] and never sought to file any additional testimony, evidence, or argument.

The petitioners also contend that I failed to abide by Local Rule of Civil Procedure 83.2 in imposing sanctions upon Attorney Rohn. (See Pet. at 28.) As previously mentioned, Local Rule 83.2 authorizes a judge of the District Court of the Virgin Islands to punish misconduct "for good cause shown ... after notice and opportunity to be heard." See LRCi 83.2(b)(4)(A). I followed this procedure. It was neither necessary nor appropriate to initiate a separate bar association disciplinary proceeding for conduct which occurred in District Court cases, largely on the record. See id. 83.2(b)(5)(A) (creating inquest procedure for instances where "the applicable procedure is not otherwise mandated"). I did not violate Attorney Rohn's due process rights, deliberately or otherwise.

Next, the petitioners assert that media coverage of the *Saldana* decision "generated grave concern from the public as to counsel's ability to obtain fair rulings," (see Pet. at 39), and led "members of the public who were not clients of Attorney Rohn" to write responsive editorials "on their o[w]n volition," (see Pet. at 21). The allegation falls of its own weight. Only one of the scant news articles submitted by the petitioners criticized the *Saldana* decision. (See Pet., Ex. 29.) Although the editorialist in question is the son of one of Attorney Rohn's clients, (see Pet., Ex. 30),[18] the petitioners portray him as a disinterested corroborator of their assertions. (See Pet. at 21.) In any event, news media outlets are not an effective barometer for determining whether recusal is warranted, as other courts have acknowledged. See, e.g., Datagate, Inc. v. Hewlett–Packard Co., 941 F.2d 864, 871 (9th Cir.1991); United States v. Haldeman, 559 F.2d 31, 136–38 (D.C.Cir.1976). Accordingly, media coverage of the *Saldana* decision provides no grounds for disqualification.

Finally, the petitioners allege that "Judge Moore has lost all sense of propri-

17. (See id. at 7, 10–13, 17–31, 35–42.) "[The Court:] So [do] either of you have any more to say[?] [Attorney Rohn's counsel:] No, Your Honor." (Id. at 48.)

18. Counsel for defendant-respondent Daily News Publishing Co. further suggests that Attorney Rohn also represents this editorialist or his business before the Territorial Court. (See Letter from Attorney Kevin A. Rames to the Honorable Thomas K. Moore and All Counsel of Record (Feb. 1, 2000).) The petitioners have not responded to this allegation.

ety and judicial decorum with respect to Attorney Rohn." (Pet. at 28.) They state:

> Judge Moore accuses Attorney Rohn of 'demeaning the judicial process' for losing her temper and snapping at opposing counsel on the telephone "go f\*\*k yourself." Yet, Judge Moore turned right around and used terms such as 'gutter language' and referred to attorney Rohn as 'vulgar' in the [*Saldana*] Opinion.

(*Id.* (citation omitted).) In my opinion, I observed:

> Attorney Rohn's behavior affects the administration of justice in several ways. It demeans the entire judicial process, the Court, the Bar in general, other counsel in particular, and even Attorney Rohn herself. That she used this gutter language in formal, court sanctioned proceedings in front of members of the public who were testifying under oath as deposition witnesses is especially appalling.
>
> . . . .
>
> . . . The Court also will direct Attorney Rohn to write letters of apology to all the lawyers, and deposition and trial witnesses she demeaned and insulted by her vulgarity and abusive conduct in the instances cited above.

*See Saldana*, 84 F.Supp.2d at 639–41.

My opinion did not describe Attorney Rohn as "vulgar," but referred to her use of profanity as "vulgarity" and referred to her expletives as "gutter language." *See Saldana*, 84 F.Supp.2d at 641, 640. These two terms are not expletives. They are socially acceptable ways of referring to the word f\*\*k used by Attorney Rohn. "Vul-

garity" refers to "the quality or state of being vulgar," and "vulgar" in turn means "crude and offensive in language." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2566 (Philip Babcock Gove ed., 1993). "Gutter" means "marked by extreme vulgarity," see *id.* at 1014, and I used it in the *Saldana* opinion to describe speech that befits the gutter, not court proceedings.

The *Saldana* sanctions order addressed Attorney Rohn's use of abusive language by directing her to attend a legal civility seminar, to apologize to court officers and personnel, to notify bar ethics committees of these sanctions, and to pay reasonable costs associated with the defendant-respondent's motion for sanctions. These sanctions fell far short of the suspension or community service suggested by opposing counsel, and were largely remedial in nature.[19]

My admonishment and sanction of Attorney Rohn for using the word f\*\*k in depositions and elsewhere, as well as calling an opposing expert witness a "Nazi," provide absolutely no grounds for judicial disqualification. Recall the Supreme Court's statement in *Liteky*, 510 U.S. at 555–56, 114 S.Ct. 1147:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been

---

**19.** I have imposed remedial non-monetary sanctions in previous cases. *See, e.g.,* Tr., *United States v. Abramson,* Crim. No.1998–228, at 214 (D.V.I. Mar. 18, 1999) (responding to defense counsel's failure to provide reciprocal discovery under Federal Rule of Civil Procedure 16 by requiring counsel to explain "the importance of complying with th[is] rule[ ], and the danger that non-compliance can cause," to other attorneys at the Virgin Islands Judicial Conference); *see also*

Order, In re *Jaritz Indus., Ltd.,* Civ.App. No.1996–003 (D.V.I. St. Thomas & St. John App.Div. Oct 5, 1999) (acknowledging that counsel addressed the Bankruptcy Basics Seminar at the District Court on April 16, 1999, about "the importance of complying with the [Federal] Rules [of Bankruptcy Procedure] and the consequences of failing to do so," and also paid a monetary sanction for violation of those rules).

confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.[20]

### 11. *South Jersey Adjustment Bureau v. Simmonds*

Most recently, Attorney Rohn defended Michael A. Simmonds, Sr. ["Simmonds"], in a federal lawsuit filed by South Jersey Adjustment Bureau, Inc. ["SJAB"]. The magistrate judge ordered SJAB to respond to Simmonds' interrogatories, and provide "competent medical authority concerning [its] ability to maintain this case." SJAB engaged in limited and incomplete discovery, but did not comply with this order, and never explained whether its principal's health would permit it to pursue the complaint. Simmonds moved to dismiss SJAB's complaint for lack of prosecution. (*See* Def.'s Mot., Civ. No.1996–234, May 13, 1998.)

On April 16, 1999, I granted this motion, and dismissed the complaint against Attorney Rohn's client with prejudice. *See South Jersey Adjustment Bureau v. Simmonds*, Civ. No.1996–234, slip. op. at 4 (D.V.I. St. Thomas & St. John Div. Apr. 16, 1999) (recognizing that "the plaintiff has stymied the defendants' efforts to defend this suit"), *aff'd*, 2000 WL 628201, App. No. 99–3435 (3d Cir. Apr. 19, 2000). My opinion noted that dismissal for failure to prosecute is a "drastic sanction ... reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Id.* at 3 (citation omitted).

Attorney K. Glenda Cameron ["Cameron"] signed and submitted the petitioners' motion for recusal on January 21, 2000.

On April 3, 2000, she signed and submitted the petitioners' reply in support of their motion. Ten days later, Attorney Cameron appeared before the Court of Appeals for the Third Circuit on Simmonds' behalf to *defend* my decision to dismiss SJAB's complaint with prejudice. During that argument, Attorney Cameron expressed no reservations about my supposed lack of impartiality in matters concerning Attorney Rohn and her clients.[21] The reasonable and objective reader may well wonder whether Attorney Cameron actually believes that I am biased against her law firm or its clients. (*Cf. Order, Trantham v. Ford Motor Co.*, Civ. No.1998–140 (D.V.I. St. Croix Div. Sept. 15, 1999) (Moore, J.) (denying defendants' motion to dismiss complaint filed by client of Law Offices of Lee J. Rohn).)

### 12. *Islands Management Group, Inc. v. Bank of Nova Scotia* and *Jones v. Daily News Publishing Co.*

I have not issued a single order in either of these cases. Undaunted by the facts, the petitioners claim that both of these cases provide support for their motion for disqualification.

Petitioner Michael Bornn ["Bornn"] has sworn that Judge Moore "imposed sanctions in my case without notice and a hearing" and "has already made rulings in my case." (*See* Pet., Ex. 6.) Both of these statements are patently false, and the petitioners have conceded as much by purporting, in a footnote to their reply, to "delete" the statements three months after Bornn swore to them before a notary public. (*See* Pet'rs' Reply, Apr. 3, 2000, at 2 n. 3); *see also supra* Section II.9 (discussing false affidavit of petitioner García). Defendant-respondent Bank of Nova Scotia

---

**20.** *See also* In re *Cooper*, 821 F.2d 833, 838 (1st Cir.1987) ("Generally, clashes between court and counsel are an insufficient basis for disqualification under [28 U.S.C. § 455].").

**21.** "The issue of unfairness seems, as usual, to depend on whose ox is gored." *Couch v. St.*

*Croix Marine, Inc.*, 23 V.I. 269, 273, 1987 WL 15549, at *3 (D.V.I.1987) (O'Brien, J.) (dismissing Attorney Rohn's claim that the District Court was "applying a different standard as to her than has been applied to other attorneys").

has moved to strike Bornn's affidavit as perjurous, and has asked me to issue an order directing him to show cause why he should not be held in contempt of court for making false statements under oath. (*See* Resp't's Opp'n, Feb. 9, 2000, at 2.) Further proceedings in that case will determine whether Bornn's false statement was another "scrivener's error." *See supra* note 9.

In the other matter in which I have yet to make a ruling, *Jones v. Daily News Publishing Co.*, petitioner Will Jones ["Jones"] avers that he has "read the article which appeared in the January 6, 2000 edition of *The Virgin Islands Daily News*," and "believe[s] that Judge Moore is biased against Attorney Rohn." (*See* Pet., Ex. 7.) He claims to be apprehensive that I will "take out" this "obvious prejudice" on his case. (*See id.*) It should go without saying that a "litigant's fear of an adverse decision" is not compelling evidence of judicial bias. *See Sciarra*, 851 F.2d at 621; *see also* In re *Wyslak*, 94 B.R. 540, 545 (Bkrtcy.N.D.Ill.1988).

I have explained through references to the record that reasonable, objective, and informed observers would not share Jones' unfounded fears, or doubt my impartiality. Neither my decisions nor the news media's reportage of those decisions evince judicial bias toward Attorney Rohn or her clients. At most, the petitioners have demonstrated that I have sanctioned Attorney Rohn several times for improper conduct, and have made both favorable and unfavorable rulings in her cases.[22] The petitioners have totally failed to show that I am "blinded by personal bias" or that I refuse to fairly apply the law or that I "appear bent on punishing counsel." (*See* Pet. at 8, 7, 5, 28, 22.) My decisions do not evince a "deep-seated antagonism that renders fair judgment impossible," and are not grounds for disqualification.

## III. Extrajudicial Grounds Advanced for Disqualification

Aware that their motion for disqualification relies almost exclusively on judicial decisions, the petitioners declare that "[i]t is obvious, from this evidence alone, that Judge Moore holds some sort of unlawful bias, perhaps gender bias, toward Attorney Lee J. Rohn and that this extrajudicial bias [23] has impaired his ability to render fair judgment." (Pet. at 11.) They claim that "[s]tories evidencing a marked degree of gender bias on the part of Judge Moore abound in the legal community," and assert that "[m]any female attorneys, including counsel, have been threatened by Judge Moore with contempt or sanctions for merely attempting to preserve an objection on the record." (Pet. at 11 n. 11.) They further claim that "[s]imilar threats to attorneys of color have been reported in the local daily newspapers in some high profile cases." (*Id.*) The petitioners further disparage my impartiality by stating that "current and past members of the Attorney General's Office" have told Attorney Rohn that "it was their perception that Judge Moore held a bias against that office." (*See* Pet'rs' Reply, Apr. 7, 2000, at 7.)

---

**22.** Even if the reader disregards this Memorandum Opinion and assumes that most of my decisions in Attorney Rohn's cases are adverse to her clients, it is well-established that a "scorecard" or tally of judicial. decisions does not amount to evidence of personal bias. *See United States v. Thompson*, 483 F.2d 527, 529 (3d Cir.1973) (section 144 case); *Southern Pac. Communications Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 996 (D.C.Cir.1984) (rejecting statistical one-sidedness of trial court's rulings as grounds for inference of judicial bias) (section 144 case); *In re International Bus. Machs. Corp.*, 618 F.2d at 929 (2d

Cir.1980) ("Judicial independence cannot be subservient to a statistical study of the calls [that the judge] has made during the contest.") (section 144 case); *see also Smith v. Danyo*, 441 F.Supp. 171, 180 (M.D.Pa.1977); *United States v. Valenti*, 120 F.Supp. 80, 88 (D.N.J.1954).

**23.** "Extrajudicial bias" refers to bias not derived from the evidence or conduct of the parties that the judge observes in the course of legal proceedings. *See Grinnell Corp.*, 384 U.S. at 580–83, 86 S.Ct. 1698.

The petitioners have absolutely no support for these very serious accusations. They do not even document how I supposedly threatened Attorney Rohn with sanctions for attempting to preserve an objection. In addition, the petitioners have not substantiated the loathsome claim that I have threatened attorneys because of their race.[24] These unsubstantiated allegations would not persuade a reasonable, informed observer that I do not fairly discharge my judicial duties in cases involving Attorney Rohn. *See Kampfer v. Gokey,* 955 F.Supp. 167, 169 (N.D.N.Y.1997) (observing that "conclusory claims of bias without adequate supporting factual allegations" do not compel recusal); *Hirschkop v. Virginia State Bar Ass'n,* 406 F.Supp. 721, 725 (E.D.Va.1975) (rejecting generalized affidavit).[25]

"Contrary to the [petitioners'] desperate, baseless accusations, the undersigned judge consistently has imposed sanctions on counsel who fail to uphold their responsibilities as officers of the Court, irrespective of gender, race, religion, creed, sexual preference, or place of birth." *Mastromonico,* 86 F.Supp.2d at 525 n. 22 (citations omitted); *see Griffith,* 39 V.I. at 206–07, 5 F.Supp.2d at 339 (discussed *supra* section II.7); *Vitale v. Triad Partnership, Ltd.,* Civ. No.1996–079, slip. op. (D.V.I. St. Thomas & St. John Div. Sept. 4, 1998)

(imposing sanctions on sole practitioner who delayed jury's announcement of verdict by failing to keep Court advised of his whereabouts during deliberations); *Government Guarantee Fund v. Hyatt Corp.,* 182 F.R.D. 182 (D.Vi.1998) (assessing substantial monetary sanction against partner in large international law firm for refusal to comply with court order); *see also* cases discussed *supra* note 19. The respondents characterize my attitude toward the responsibilities of counsel who appear before me as follows:

> Judge Moore is no stranger to sanctioning attorneys. The 'book' on Judge Moore is to come prepared to every hearing; to know the record; to make your arguments but not belabor them; to make your objections and preserve your record but not waste the court's time; to be honest; to be on time; and to be respectful.
>
> ... Petitioner has confused Judge Moore's willingness to impose sanctions against any attorney ... with bias against [Attorney Rohn].

(Resp't's Opp'n, Feb. 9, 2000, at 21.)

One central fact emerges from the petitioners' morass of accusations: The petitioners have absolutely no evidence of personal or extra-judicial bias. (*See* Pet. at 5 n. 9 ("The genesis of this bias is unknown

---

**24.** When I disbarred Wayne L. Sprauve ["Sprauve"] for lying under oath, among other things, in obstructing District Court litigation, he leveled the charge that his disbarment resulted from racial bias. My opinion in the *Mastromonico* case carefully documented Sprauve's legal misconduct, dispelling any suggestion that his disbarment resulted from anything other than his own misdeeds. *See, e.g., Sprauve v. Mastromonico,* 86 F.Supp.2d 519, 529–30 (D.Vi.1999) (recalling that attorney "engaged in a persistent pattern of deceit and delay throughout this litigation in violation of his duty of candor toward this Court, his duty to expedite litigation, his duty to present only meritorious claims and defenses, and his duty of fairness to opposing parties and counsel, as codified by the American Bar Association's Rules of Professional Conduct").

After Mr. Sprauve declined to comply with the procedural requirements for an appeal,

the Court of Appeals dismissed his efforts to challenge my decision. (See Order, No. 99–3499 (3d Cir. July 16, 1999); Order, No. 99–3723 (Mar. 29, 2000).) The Court of Appeals also has disbarred Mr. Sprauve. (*See* Order, No. 99–8047 (3d Cir. Sept. 29, 1999).)

**25.** If "[i]t is obvious ... that Judge Moore holds some sort of unlawful bias, perhaps gender bias, toward Attorney Lee J. Rohn," (Pet. at 11), it is obvious only to the petitioners. Although they advance the declaration of Assistant Federal Public Defender Pamela Lynn Wood ["Wood"] as support for their allegations of chauvinism, Attorney Wood's affidavit does not adopt those allegations, and Attorney Wood has never asked me to disqualify myself for personal or gender bias in any of the myriad cases in which she has appeared before me.

to Attorney Rohn.").) The petitioners' bare accusations are not grounds for recusal, and merely illustrate "the depths to which civil advocacy has fallen." *See Stephen*, 88 F.Supp.2d at 425.

### Conclusion

In this Memorandum Opinion, I have examined the petitioners' charges of judicial bias and have chronicled how the recorded facts repeatedly and consistently contradict their accusations. Armed with the truth, reasonably objective persons would reject the petitioners' overwrought and unfounded contentions, and conclude that I fairly discharge my judicial duties in cases involving the Law Offices of Lee J. Rohn.

As a district judge, I am sworn to adjudicate all cases which come before me unless proper grounds for disqualification exist. *See, e.g., Vangarelli v. Witco Corp.*, 808 F.Supp. 387, 389 (D.N.J.1992). The duty to preside over cases in the absence of lawful grounds for disqualification is vital in the judicial district of the Virgin Islands, which encompasses somewhat more than 100,000 residents, with only two district judges. It would violate my oath of office, and the trust that has been reposed in me, to assign my cases involving Attorney Rohn to another judge. I will deny the petitioners' motion.

### ORDER

For the reasons painstakingly set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the petitioners' motion for recusal is **DENIED**.